DAVID WARD v. ATLANTIC COAST LINE RAILROAD, a Corporation.

(Filed 29 November, 1944.)

**1. Appeal and Error § 39d—**

Where there is objection and exception to a question asked a witness, the record failing to show that the witness answered the question, error, if any, is harmless.

**2. Evidence §§ 15, 27—**

The weight of the evidence is for the jury, while its competency is for the court.

**3. Trial §§ 29b, 33—**

Any substantial errors made by the court, in the statement of the evidence or in the statement of the contentions of the parties, must be called to the court's attention at the time they are made, in order to give an opportunity for correction, and the failure to so call them to the court's attention is a waiver of any right to object and except thereto on appeal.

**4. Trial § 29a—**

While a court's charge may be subject to some criticism, it is sufficient in substance, when read contextually, if it covers the subject and presents the issues understandably in accordance with the settled principles applicable to the case.

**5. Appeal and Error § 39e—**

There is nothing objectionable in a charge to the jury "that while this is a case of a colored person against a railroad, each is. entitled to the same rights under our law and to a fair and impartial trial."

APPEAL by plaintiff from *Harris, J.,* at February Term, 1944, of COLUMBUS.

Civil action for recovery of damages allegedly resulting from fire set out through actionable negligence of defendant.

Plaintiff alleges in his complaint in summary these facts:

I. That on 16 March, 1943, a certain thirty-acre tract of land in Columbus County, North Carolina, of which he was then the owner, was burned over by a fire which escaped from one of defendant's locomotives operated on its line of railroad between Chadbourn and Fair Bluff in said county, and which ignited the growth on its right of way and immediately burned from said right of way and spread across the said land, seriously injuring and damaging the land and timber to the extent of six hundred dollars.

II. That the said fire and the damages therefrom to the said land and timber of plaintiff were proximately caused by the negligence of defendant in that: (a) defendant allowed its said right of way alongside of and

up to plaintiff's said land to become foul with the inflammable material thereon—so foul that when sparks from defendant's train fell thereon fire immediately sprang up and spread to plaintiff's land, and (b) the defendant failed to exercise due care (1) in the equipment of its said locomotive by failing to provide such equipment and spark arresters thereon as to prevent the falling of sparks therefrom in such quantities as to cause the said fire, (2) in the operation of its said trains so as to prevent the falling of sparks and ignited particles from its said engines on its said right of way, when it well knew, or ought to have known, of the foul condition of its right of way, and that said sparks would cause the fire to spring up and injure the property of the plaintiff, and (3) to put out said fire which had resulted from its failure to exercise due care in the operation of its trains and in the keeping of its said right of way.

Defendant, in answer filed, denies all the material allegations of the complaint.

In the trial court plaintiff offered evidence tending to show: (1) That he bought the land in question in August, 1920, and has since been in the open, notorious and adverse possession of it.    (2) That on 16 March, 1943, a fire burned over all eighteen acres of woodland on said tract of land, greatly damaging the trees and undergrowth, and thereby deteriorating the value of the land to extent of $500 to $600; that the fire had burned west from the west outside of a railroad ditch, the dirt from which is thrown over toward plaintiff's land, and did not burn between the ditch and the railroad ties; that a kind of long freight train on defendant's track from Chadbourn going toward Tabor came along about two o'clock in the afternoon and a fire sprang up right after the train passed, "just as it passed," and burned through the woods, across plaintiff's land; that the fire started on plaintiff's woodland on west side of, and not far from the ditch; and that "a railroad man had burned off the railroad right of way from the ditch back to the railroad."

Then defendant offered evidence tending to show: That the engine pulling the train in question, properly operated by experienced engineer on 16 March, 1943, was properly equipped with a spark arrester in general use by railroads (Exception), and in good condition.    The boiler inspector testified, without objection, that upon inspection on 11 March and again on 13 April, 1943, the spark arrester, composed of three parts, a diaphragm, table sheet and netting in front of these two to stop sparks, was such as is accepted and in general use as railroad equipment for boilers, and on former date it was in good condition, as was the ash pan, and that on latter date both the spark arrester and the ash pan were in good condition, and no repairs were made; and then explained the physics of the mechanical draft structure, and the effect of approved spark arrester upon sparks drawn against it.

Plaintiff, in rebuttal, offered a witness who testified that when train passed a point about four hundred yards before getting even with plaintiff's land, "there was fire flying out of the smokestack and coals of fire and sparks and some of them were lighting over in the field beside the railroad"; that she did not see the train stop; and that when she got up a little further and looked around, she saw the fire burning on plaintiff's land.

Then defendant offered testimony of witnesses who in response to the question, "Have you an opinion satisfactory to yourself as to the difference in value of that land before the fire and afterward?" gave opinions respectively of $5.00 per acre. Plaintiff objected to both questions and answers and moved to strike out the answer of one of the witnesses.

Upon such evidence and under charge of the court the case was submitted to the jury upon these three issues:

"Is the plaintiff the owner and in possession of the lands described in the fourth paragraph of the complaint?

"Was the plaintiff's said land injured by the negligence of the defendant, as set out in the complaint?

"What damages is plaintiff entitled to recover."

They were answered by the jury as follows: The first "Yes," the second "No," and the third, no answer.

From judgment for defendant on verdict rendered, plaintiff appeals to Supreme Court and assigns error.

*Varser, McIntyre & Henry for plaintiff, appellant.*
*L. J. Poisson and E. K. Proctor for defendant, appellee.*

WINBORNE, J. Careful consideration of the fifty-eight assignments of error treated in the brief of appellant fails to show error for which the judgment below should be disturbed.

1. The first assignment, exception one, relates to action of the court in overruling objection to a question asked the foreman of boilermakers of defendant as to what the engineer's report, which the witness did not make, showed. The record fails to show that the witness answered the question. Hence, any error in permitting the question is harmless.

2. The second and third assignments, covering exceptions 2 and 3, relate to testimony of the engineer as witness of defendant, to the effect that the engine pulling train No. 521 on day in question was equipped with a spark arrester in general use—of the type in general use by railroads. The grounds for objection are (1) that the witness was permitted to so testify without any basis for his knowledge as to other railroads, and (2) that the witness did not recollect what kind of train the defendant operated by the plaintiff's land. As to the first, the answer

of the witness tends to show knowledge. And while in the second the witness showed some lack of recollection as indicated, later in his testimony it appears that from the record he turned in on 17 March the number of the train he drove on 16 March was No. 1035. Thus it is seen that the objections go more to the weight of the evidence, which is for the jury, than to the competency of it, which is a question of law for the court.

3. The fourth and fifth assignments, covering exceptions 4, 5 and 6, relate to admission of evidence bearing upon the issue of damages. Since the jury answered the issue as to liability of the defendant in the negative, and therefore the issue as to damages was not answered, error, if any, in admitting evidence in mitigation of damages is harmless. *Allred v. Kirkman,* 160 N. C., 392, 76 S. E., 244. See also *Walker v. Walker,* 151 N. C., 164, 65 S. E., 923; and *Bird v. Lumber Co.,* 163 N. C., 162, 79 S. E., 448, where similar principles are applied.

4. Assignments 6 to 36, both inclusive, covering exceptions 7 to 37, both inclusive, are directed to the charge of the court in stating the evidence and in stating what is contended by the parties on their pleadings and on the evidence introduced. In this connection the record does not show that the attention of the court was called at the time to any error in this respect, or that any objection thereto was made at the time. It is a settled rule of practice in this State that "any substantial errors made by the court in the statement of the evidence or in the statement of the contentions of the parties, must be called to the attention of the court at the time they are made, in order to give an opportunity to make correction, and the failure to so call them to the court's attention is a waiver of any right to object and except thereto on appeal," headnote 7 in *Mfg. Co. v. R. R.,* 222 N. C., 330, 23 S. E. (2d), 32.

Moreover, the record shows that the court, after stating various contentions of the parties, told the jury that if the court had left out any contention argued by counsel either for plaintiff or for defendant, or if other contentions arise in the minds of the jury from the evidence, the jury should consider same and give them the same consideration as those called to their attention by the court.

5. The next 13 assignments, Nos. 37 to 49, both inclusive, covering exceptions 38 to 50, both inclusive, are to the charge upon the law paragraph by paragraph as given by the court bearing on the second issue, that is, the issue as to negligence of defendant. Moreover, assignments 51 to 56, both inclusive, covering exceptions 52 to 57, both inclusive, are to the failure of the court to charge in specified aspects bearing on the second issue. While the charge as so given may be subject to some criticism, it is sufficient in substance when read contextually to cover the subject and to present the issue understandably, in accordance with

well settled principles applicable to such cases. See *Williams v. R. R.,* 140 N. C., 623, 53 S. E., 448; *Currie v. R. R.,* 156 N. C., 419, 72 S. E., 488; *Mfg. Co. v. R. R., supra,* and numerous other cases.

6. Assignment No. 50, covering exception 51, relates to that portion of the charge in which the court stated to the jury that while this is the case of a colored person against a railroad, each is entitled to the same rights under our law and to a fair and impartial trial—that if the plaintiff be entitled to recover against the railroad he ought to recover, and if he is not entitled to recover in law and in fact, he ought not to recover. In this we see nothing objectionable.

7. Assignments 57 and 58, covering exceptions 58 and 59, are formal. In the judgment below there is

No error.